UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIE COOLEY, | ) | 1:09-CV-2223 OWW JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, Warden, | ) | |
| | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| Respondent. | ) | DAYS |
| | ) | |

Willie Cooley (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1990 conviction for attempted first-degree murder. The trial court sentenced Petitioner to a prison term of life with the possibility of parole plus fourteen years. On June 26, 2008, the California Board of Parole Hearings ("Board") conducted a hearing and recommended that Petitioner be denied parole. See Parole Hearing Transcript ("Transcript") at 68.[1] Petitioner filed habeas petitions challenging the Board's denial of parole in all three levels of the California courts. On June 23, 2009, the Los Angeles County Superior Court denied the Petitioner's state habeas petition. See Petitioner's Exhibit A. The California Court of Appeal and the California Supreme Court issued summary denials of Petitioner's claims. See Petitioner's Exhibits B, C. On December 23, 2009, Petitioner filed the instant federal petition for writ of habeas corpus challenging

---
[1] The Transcript is contained in the Respondent's answer. It is listed as Exhibit 12-2.

1  the Board's denial of parole.  See Doc. No. 1.  Petitioner claims that the Board's denial of parole
2  violated his due process rights because there was no evidence to support the finding that he currently
3  posed an unreasonable risk of danger to the public if released.  See Petition at 11.  On July 26, 2010,
4  Respondent filed an answer  to the petition.  See Doc. No. 12.  On August 18, 2010, Petitioner filed a
5  traverse.  See Doc. No. 13.

## FACTUAL BACKGROUND

The Board summarized the facts as follows[2]:

> This crime occurred on December 10, 1988, at the apartment complex where both Mr. Cooley and the victim lived.  It states that Mr. Cooley, for the meat of the commitment offense, went to Mr. Dinman's (spelled phonetically) apartment where there was Mr. Dinman; his girlfriend, Joett Cummins (spelled phonetically); and their two children, an Ebony, age six and Essence, age four, and Damon's (spelled phonetically) – Willie Damon's brother, Ronald, was also there with this [sic] fiancé, Rhonda Wolf and their daughter, Alexis, in the apartment, and at approximately 10:30 p.m., Mr. Cooley, along with three or four other individuals, showed up at the apartment, came in with firearms, several shots were fired in the residence, and Ms. Wolf was hit in the face.  She was also, I believe it was, six months pregnant.  Also, in the appellate decision, there's statements that Mr. Cooley fired five to seven shots at Willie Damon, and he also fired several shots into the kitchen at Mr. Damon.

See Transcript at 12-13.

> [D]inman noticed Cooley was pointing what appeared to him to be an automatic handgun at his chest.  Cooley came into the apartment, followed by two of his companions.  All three intruders were armed with handguns.  While Cooley held Dinman had [sic] gunpoint, the others began ransacking the apartment and shooting bullets into the walls, furniture, and the VCR.  Cooley struck Rhonda in the face.  A stocky-man struck more blows and kicked her in the stomach area while shouting death threats.  Rhonda was in her sixth month of pregnancy at the time of the attack.  When her baby was born, he had bruises on his face.  At one point, Cooley turned his gun away from Willie Damon – Dinman and shot at Ronald.  Dinman took this opportunity to run into the kitchen.  Cooley fired five to seven shots at Dinman as he fled.  Afer Cooley had fired several shots into the kitchen at Dinman, no bullets remained in the chamber, and Dinman could hear the click of someone trying to fire an empty gun.  When the police got there and upon examination of the apartment, Dinman and the deputies discovered some ten bullet holes in the walls.  One bullet had entered the freezer, passed through a pair of ribs, and exited through the back of the freezer.  The inside of the apartment on the front porch, deputies found several shell casings including some appearing to come from an automatic weapon.  The deputies found no weapon inside of the apartment.

See Transcript at 72-73.

### The Board's Decision

The Board determined that Petitioner was unsuitable for parole and would pose an

---

[2] The Board derived the facts from the Court of Appeals decision.  See Transcript at 11.

unreasonable risk to public safety if released for the following factors: (1) Petitioner's commitment offense because there were multiple victims that were attacked and injured, the motive for the crime was trivial,[3] and Petitioner acted in a very callous manner (see Transcript at 68-69); (2) Petitioner's prior criminal history, which included at least one battery on a peace officer[4] and previous probation violations (see Transcript at 13, 29); (3) Petitioner's serious disciplinary record, the most recent 115 violation occurring on July 2, 2002 for possession of marijuana as a result of a positive test for marijuana (see Transcript at 23, 70); and (4) Petitioner's 2008 psychological report, which indicated that Petitioner's propensity for violence was in the moderate range when compared to similar inmates and that he scored in the high range of psychopathy. See Transcript at 70.

## DISCUSSION

### I.     Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. See 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

### II.    Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

---

[3] The Board noted that the commitment offense started out as a dispute as to who had the right-of-way in Petitioner's apartment complex driveway. See Transcript at 68.

[4] The Board noted that Petitioner's criminal record appeared to indicate that Petitioner was convicted of two incidents of battery on a peace officer-one in 1984 and the other in 1985. Petitioner claimed that he was only convicted of one incident of battery. The Board concluded that it was unclear as to whether there was one incident or two separate incidents of battery.

1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit case law is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'").  Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions.  The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). If the dispositive state court order, however, does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) overruled on other grounds, Lockyer, 538 U.S. at 75-76; see also Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Here, the Los Angeles Superior Court reached the merits of Petitioner's claims. As both the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the Los Angeles County Superior Court. See Nunnemaker, 501 U.S. at 804.

### III.    Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth several grounds for relief, which all contend that Petitioner's due process rights were violated by the Board's denial of parole. Petitioner asserts the following arguments: (1) Petitioner's commitment offense in and of itself is not supportive of an unsuitability finding because of the passage of twenty years and because of Petitioner's rehabilitative efforts (see Petition at 5-6); (2) Petitioner's prior criminal history is not "some evidence" of current dangerousness because his criminal history is non-violent and it occurred nearly twenty-four years ago (see Petition at 7); (3) Petitioner's disciplinary record is not probative of current dangerousness because the 115 for marijuana use was non-violent and occurred six years ago (see Petition at 7-8); and (4) Petitioner's 2008 psychological evaluation's finding that Petitioner's propensity for violence was in the moderate range did not provide some evidence possessing "some indicia of reliability" to the central issue of current dangerousness. The psychologist also did not find that Petitioner met the cut off of a true psychopath. See Petition at 9-10.

### A.     Legal Standard for Denial of Parole

The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there exist[s] a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Sass, 461 F.3d at 1127.  The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." Hayward, 603 F.3d at 555.  The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." Id. at 559.  The Hayward court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights.  As the Ninth Circuit later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)).  The Pearson court found that, "Hayward necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." Id.

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law.  The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." Id. at 611 (citing Hayward, 603 F.3d at 562); see also Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state").  Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal

due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). Thus, the inquiry the Court must now undertake is whether the Los Angeles County Superior Court's decision was an unreasonable application of California's "some evidence" standard.

### B.      Los Angeles Superior Court Decision

The Los Angeles Superior Court concluded that pursuant to In re Lawrence, 44 Cal. 4th 1181, 1205-06 (2008), the record contained "some evidence" to support the Board's finding that the Petitioner presented an unreasonable risk of danger to society and was unsuitable for parole. First, the Superior Court noted that the Board relied on Petitioner's commitment offense and previous criminal history. The Superior Court found that there was "some evidence" to support the Board's finding that multiple victims were attacked, injured, or killed in the same or separate incidents. See Petitioner's Exhibit A at 1. The Superior Court found that the motive for the crime was very trivial in relation to the offense given that the dispute involved an argument over the right-of-way in a parking lot. Id. The Superior Court, however, found that there was no evidence to support the Board's finding that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The Superior Court found that Petitioner only did the minimum necessary to commit his crime. Id. at 2. The Superior Court found that Petitioner had a previous criminal history of committing battery on a peace officer and receiving stolen property. See Petitioner's Exhibit A at 2.

Second, the Superior Court noted that under Lawrence, the Board may base a denial of parole on the circumstances of the commitment offense, or other immutable factors, but only if those facts supported the ultimate conclusion that the inmate continues to pose an unreasonable risk to public safety. See Petitioner's Exhibit A at 2. Under the Lawrence framework, the Superior Court found that there were significant additional factors which were predictive of current dangerousness. Id. Specifically, the Superior Court found the record indicated that Petitioner had two 115s while in prison, the last one which occurred in 2002. See Petitioner's Exhibit A at 2. The Superior Court

noted that both 115s involved the use of marijuana. Id. The Superior Court observed that the Board found that Petitioner's 2008 psychological report was not favorable, as it concluded that Petitioner scored in the high range of psychopathy and that his overall propensity for violence was in the moderate range. See Petitioner's Exhibit A at 2.

The Los Angeles Superior Court applied the correct standard of review. The California Supreme Court held in In re Lawrence that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." Lawrence, 44 Cal. 4th at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). "[A] reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke, 606 F.3d at 1214 (emphasis in original) (quoting Lawrence, 44 Cal. 4th at 1221). As the Ninth Circuit observed in Cooke:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole, "[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

Id. (quoting Lawrence, 44 Cal. 4th at 1210, 1213); see also Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). Here, the Superior Court considered whether there was "some evidence" of current dangerousness. The Court's review of the record reveals that the evidence cited by the Superior Court is sufficient to satisfy the "some evidence" standard.

**C.    Commitment Offense and Prior Criminal History**

Petitioner challenges the Board's reliance on his commitment offense and his prior criminal history.[5] As the Superior Court noted, however, the Board did not just rely on Petitioner's

---

[5] Petitioner argues that his prior criminal history is not probative of current dangerousness due to the passage of time and given that his history consisted of non-violent offenses. The Court notes, however, that Petitioner's criminal history, does include at least one violent offense. In either 1984 or 1985, Petitioner was convicted of committing battery on a peace officer.

commitment offense and prior criminal history.  As discussed more fully below, the Board also relied on Petitioner's recent serious drug-related disciplinary history and on Petitioner's unfavorable 2008 psychological evaluation.

### D.    Disciplinary History

Petitioner challenges the Board's reliance on his disciplinary history on the grounds that his 115s were non-violent and occurred over six years ago.  Petitioner received two 115s while in prison that involved the use of marijuana-the most recent 115 occurred in July 2002.  Petitioner has a history of drug use, where he began using marijuana at the age of 13 and used it on a daily basis and used cocaine from 1980 to 1983 on a regular basis.  See Respondent's Exhibit 12-1-Psychological 2008 Evaluation at 9.  Petitioner testified at his parole hearing that he used and sold cocaine between 1980 and 1983.  See Transcript at 48-49.  Petitioner's 2008 psychological evaluation concluded that he meet the diagnostic criteria for "Polysubstance Dependent, in a controlled environment."   At Petitioner's parole hearing, the Board asked Petitioner the following questions regarding his drug use:

> Q: Do you look at your use of marijuana and cocaine as an addiction?
> A: No, I don't think it's an addiction because its not something I do all the time.
> Q: Is it a life-long problem?
> A: No, sir.

See Transcript at 51.  The 2008 psychological evaluation noted that Petitioner had not been continuously involved in AA throughout his incarceration.  See Respondent's Exhibit 12-1-Psychological 2008 Evaluation at 8.  When the Board asked Petitioner if he worked on AA's 12 steps, Petitioner responded that he did not practice the steps and that he never learned them.  Id. at 51, 53.

California Parole regulations list institutional behavior as one of the factors the Board considers in determining whether the prisoner poses a current risk of danger to the public safety.  See Cal. Code Regs. tit. 15, § 2402(c)(6).  Institutional behavior, defined as "[t]he prisoner has engaged in serious misconduct in prison or jail," is a circumstance tending to show parole unsuitability.  Although Petitioner denies that alcohol and drugs were involved in the commitment offense and no

---

See Transcript at 13.

information exists to counter Petitioner's denial, it was reasonable for the Superior Court to rely on Petitioner's most recent drug-related 115 in light of the following: (1) the 2008 psychological evaluation noted that "if [Petitioner] would return to use of alcohol or drugs or prior lifestyle issues, his risk of recidivism and re-offending would considerably increase" (see Respondent's Exhibit 12-1- Psychological 2008 Evaluation at 9); (2) Petitioner has been diagnosed with a substance abuse dependence and yet Petitioner denies that he has a problem; (3) Petitioner has had inconsistent substance abuse treatment while in prison and does not have knowledge of AA's 12 steps; and (4) Petitioner has been disciplined for using drugs while in prison in the past six years.

Accordingly, because of Petitioner's diagnosed drug problem, recent drug usage, inconsistent drug treatment, and 2008 psychological evaluation, which indicated that if Petitioner were to revert to drug use, his recidivism rate would considerably increase, Petitioner's recent 115 was properly considered as "some evidence" that Petitioner remains an unreasonable risk to public safety if released.

### E.     Psychological Evaluation

Petitioner challenges the reliability of his 2008 psychological evaluation. Petitioner's most recent psychological report does not favor release. Petitioner's 2008 evaluation, which was authored by Dr. Richard Starrett, concluded that "the inmate's level of psychopathy is in the *high* range. The inmate's overall propensity for violence is in the *moderate* range when compared to similar inmates. The inmate's general recidivism risk is rated in the *medium* range." See Respondent's Exhibit 12-1-Psychological 2008 Evaluation at 8. (emphasis in original). The 2008 evaluation further provided the following:

> Mr. Cooley is not a psychopath which research indicates decrease his violence potential and chance of recidivism. The inmate does have a high level of elevations on personality traits and antisocial characteristics of a psychopath. The inmate's overall propensity for future violence is in the moderate range when compared to similar inmates. The inmate's elevations due to his past history were due to his age at the time of his first violence, having a prior criminal history, his involvement in unstable relationships, his not establishing a career, being a substance abuser, having an Antisocial Personality Disorder, and having prior supervision failures, and to a lesser extent, early maladjustment and having a high level of psychopathy. These variables increase his violence potential.

See Respondent's Exhibit 12-1-Psychological 2008 Evaluation at 8. (emphasis in original).

The 2008 psychological evaluation's findings that Petitioner's propensity for violence was

in the "moderate" range and that he had a high range of psychopathy were properly considered by the Board in determining if Petitioner remained an unreasonable risk to public safety if released. It was not unreasonable for the Board to credit the conclusions of a recent psychological report, which was prepared by a licensed psychologist, as an accurate assessment of Petitioner's propensity for violence. Petitioner's mere disagreement with the psychologist's conclusions does not render the psychological evaluation invalid.

Here, the psychologist's evaluation that Petitioner posed a "moderate" risk of future violence and had a high range of psychopathy, coupled with Petitioner's recent drug-related 115s is sufficient evidence to demonstrate future dangerousness. See Hayward, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence, coupled with evidence that offense was particularly aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of parole.) Accordingly, Petitioner's unfavorable psychological report was properly considered by the Board as "some evidence" that Petitioner remains an unreasonable risk to public safety if released.

**CONCLUSION**

The Board relied on several factors in determining that Petitioner was unsuitable for parole, including Petitioner's commitment offense, recent serious disciplinary history, prior violent criminal history, and unfavorable 2008 psychological report. The Court cannot find that the Superior Court's determination that the Board's decision is supported by "some evidence" was objectionably unreasonable. Therefore, Petitioner is not entitled to habeas corpus relief.

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 531 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the Petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby recommends that Petitioner be DENIED a certificate of appealability.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that:

1. The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and

2. The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and

3. A Certificate of Appealability be DENIED.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 10, 2010**          /s/ John M. Dixon
                                            UNITED STATES MAGISTRATE JUDGE